UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RUSSELL M. MARTINEZ,

    Plaintiff,

v.

ROBERT H. TRIMBLE,

    Defendant.

Case No. 11-cv-03553-JST

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: ECF No. 1

## I. INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## II. BACKGROUND

### A. Factual and Procedural History

The CaliforniaCourt of Appeal summarized the facts underlying the charged offense as follows:

> On December 21, 2000, defendant spoke to Immer Mendoza at the toy store where he worked and he said he wanted to change jobs and liked to paint cars. When Ms. Mendoza suggested he check out the nearby Autorella Paint and Body Shop, defendant said he did not want to go there because he had a long-standing feud with an employee. He said he hated this person, and his friends were urging him to take revenge against him. Defendant said that if he saw the person, he would kill him. Ms. Mendoza recommended that he seek psychological help at Barrios Unidos. However, defendant said that there were too many gang members there.
>
> On January 12, 2001, Mario Cerna, Angel Ayala, Michael Amaya, Larry Montanez, Roberto Molasco, and Edith Hayes were at work at Autorella. After lunch, Cerna and Ayala were out front working on a car when Cerna noticed defendant about 50 feet away mad-dogging them-i.e., staring at them in an unfriendly way. After a

>while, defendant left. Later, that afternoon, as they continued to work on the car, Cerna saw defendant running toward them with a gun. He pointed it at them and fired, hitting Ayala. Cerna and Ayala ran into the office. They told Hayes to call the police. Defendant continued toward the shop with his arm raised, and the other employee started to run. Cerna fled into the back, and defendant chased and shot at him a couple of times. Defendant also fired at Amaya. Within moments, Ayala went into the back and tackled defendant. They fell and struggled on the ground. Cerna returned to assist Ayala. There was another shot. Ayala and defendant got up, and defendant fired at Cerna. Ayala and Cerna both grabbed him and struggled for the gun, which fired again. Around this time, Detective Jarrod Patrick of the Santa Cruz Sheriff's Department arrived. He ordered that the gun be dropped and then joined the struggle for it. Defendant kept trying to fire it, but Amaya was finally able to grab it away from him. Defendant then broke free and fled. Detective Patrick chased and later arrested him.
>
>Ayala was shot three times and died from severe internal bleeding at the scene.

People v. Martinez ("Martinez II"), No. H030750, slip op. at 2-3, 2010 WL 127559, at *1-2 (Cal. Ct. App. Jan. 14, 2010) (unpublished) (Exh. 7).[1]

In his trial testimony, Petitioner denied telling Ms. Mendoza that he was unable to work at Autorella because of a feud with Cerna, and denied saying that he would take revenge on Cerna. Id., slip op. at 5, 2010 WL 127559, at *3. Petitioner testified that on the day of the incident, Cerna and Ayala taunted him with a water hose, with a spray gun, and with a hammer, as he was walking by Autorella. Id., slip op. at 4-5, 2010 WL 127559, at *3. Petitioner stated that, as petitioner was walking away, he started envisioning Cerna attacking him and his family. Id., slip op. at 5, 2010 WL 127559, at *3. He became so distressed that he went home to get his gun, and walked back thinking he would either scare Cerna or shoot him. Id. Petitioner claimed stated that he initially shot Ayala thinking he was Cerna. Id. From that point on, Petitioner only remembers chasing Cerna with his gun in hand. Id.

---

[1] Citations to "Exh." are to the record lodged with the Court by the Attorney General.

2

At trial, both sides submitted evidence of the mens' prior adversarial relationship. Cerna testified that he and petitioner attended the same high school. Id., slip op. at 3, 2010 WL 127559, at *2. They belonged to different gangs that didn't get along and Cerna also dated Petitioner's sister, which angered Petitioner. Id. According to Cerna, he and Petitioner fought in 1998, but used no weapons and no one was injured. Id. After they graduated, Cerna saw petitioner on a few occasions and they would "mad-dog" each other. Id. Petitioner testified that Cerna and his friends assaulted him with weapons on numerous occasions before January 12, 2001. Id., slip op. at 4, 2010 WL 127559, at *2. Petitioner claimed that Cerna and his friends assaulted him in March 2000, and that Cerna's friends did so again in October 2000. Id. Petitioner claims that he then purchased a gun on the street for protection against Cerna. Id.

A jury convicted Petitioner of second degree murder and attempted premeditated murder, and made the enhancement finding that in committing the offense, Petitioner personally and intentionally used and discharged a fireram, causing death. People v. Martinez ("Martinez I"), No. H025896, 2005 WL 1670399 (Cal. Ct. App. July 18, 2005) (unpublished). The California Court of Appeal reversed that judgment, holding that Petitioner had presented enough evidence as to the existence of provocation that he was entitled to an instruction on the lesser included charge of voluntary manslaughter and attempted voluntary manslaughter. Id. After retrial, a jury again found petitioner guilty of second degree murder and attempted premeditated murder and again found the enhancement allegations true. Martinez II, slip op. at 1, 2010 WL 127559, at *1. The California Supreme Court summarily denied Petitioner's petition for review. People v. Martinez, No. S180387 (Cal. Apr. 28, 2010), Exh. 9.

### III. ANALYSIS

#### A. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose

3

v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17

4

(2003).

Here, as noted, the California Supreme Court summarily denied petitioner's petition for review. The Court of Appeal, in its opinion on direct review, addressed the five claims petitioner raises in the instant petition. The Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir.2005).

### B. Petitioner's Claims

As grounds for federal habeas relief, petitioner alleges that (1) the trial made erroneous or incomplete instructions to the jury; (2) that defense counsel rendered ineffective assistance in violation of the Sixth Amendment; and (3) that there was cumulative error.

#### 1. Instructional Error

Petitioner claims that the trial court gave erroneous and incomplete instructions to the jury. The trial court's instructions were as follows:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.
>
> The defendant killed someone because of a sudden quarrel or in the heat of passion if: (1)  The defendant was provoked; (2)  As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; AND (3)  The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.
>
> Heat of passion does not require anger, rage, or any specific emotion.  It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.
>
> In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it.  While no specific provocation is required, slight or remote provocation is not

5

> sufficient. Sufficient provocation may occur over a short or long period of time.
>
> It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts.

Exh. 2, at 28.

"[T]he fact that . . . [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); see also Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question"). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 505 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[T]he instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 505 U.S. at 72 (quoting Cupp, 414 U.S. at 147). In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). If there is a federal constitutional error, Petitioner must also show he suffered actual prejudice from the error, i.e., that the error had a substantial and injurious effect or influence in determining the jury's verdict, before the court may grant federal habeas relief. Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

The California Court of Appeal primarily analyzed Petitioner's claims as claims under state of law, rejecting any federal claims with the following analysis:

> Heat-of-passion voluntary manslaughter is a lesser included offense of second degree murder, and it is settled that failing to instruct, failing to give adequate instructions, and giving erroneous instructions on a lesser included offense constitute errors of state, not federal, law. (People v. Lasko, supra, 23 Cal.4th at pp. 111–113; People v. Blakeley (2000) 23 Cal.4th 82, 93; People v. Lee, supra, 20 Cal.4th at p. 62; People v. Breverman, supra, 19 Cal.4th at pp. 164–179.) Thus, we reject defendant's claim that the instructional omission constitutes federal constitutional error reviewable under Chapman v. California (1967) 386 U.S. 18. Rather, the state standard set forth in People v. Watson, supra, 46 Cal.2d 818 applies.

Martinez II, slip op. at 14, 2010 WL 127559, at *8, n. 3. Petitioner makes three types of objections to the trial court's instructions: (1) the trial court gave erroneous voluntary manslaughter and attempted voluntary manslaughter instructions regarding provocation; (2) the trial court erred in instructing the jury as to when they can consider evidence of provocation; and (3) the trial court failed to instruct the jury on "major concepts" that would reduce murder to manslaughter and attempted murder to attempted manslaughter. The Court addresses each argument in turn.

### a. Error in Provocation Instruction

Petitioner raises two types of objections to the trial court's provocation instruction. First, Petitioner contends that the instruction erroneously described the subjective and objective components of heat of passion. Second, Petitioner argues that the trial court never actually defined "provocation."

#### i. Subjective and Objective Components of Heat of Passion

According to Petitioner, the correct instruction for the subjective component should read, "the defendant acted rashly *or* without due deliberation and reflection[,]" and the objective component should read, "whether under the given facts and circumstances an ordinarily reasonable person of average disposition could have acted rashly *or* without deliberation and reflection." Petitioner's "Attachment Number One," at 5 (ECF No. 1).

Assuming that this was, in fact, an error, Petitioner provides no argument about why it is

an error of federal law.  Certainly Petitioner does not demonstrate that the Court of Appeal's conclusion that this was a matter only of state law was an unreasonable application of settled Supreme Court precedent.  Because petitioner's challenge pertains solely to a matter of state law, the Court may not review petitioner's federal habeas petition on this claim.

Moreover, even if this argument did present a valid due process claim, the Court of Appeal correctly held that the trial court did not err in failing to provide this "disjunctive" instruction, because "rashly" and "without due deliberation" are not two different ways of proving provocation under state law.  Martinez II, slip op. at 8-9, 11, 2010 WL 127559, at *5-6.  The two terms are not separate and alternative elements of heat of passion.  Id., slip op. at 11, 2010 WL 127559, at *5-6.  Because "rashly" and "without due deliberation" share the same meaning, the trial court did not err by using the word "and" instead of "or."

Petitioner is not entitled to federal habeas relief on this claim.

### ii. Failure to Completely Define Provocation

Petitioner claims the trial court erred in failing to define provocation.  Petitioner contends that although the trial court instructed the jury that "[i]n order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it," the trial court never actually defined provocation.  Exh. 2, at 28.

According to Petitioner, this omission violated both his due process rights and his Sixth Amendment right to have a jury determine the existence of every element of the offenses with which he was charged: murder in the second degree and attempted premeditated murder.  Traverse, ECF No. 17 at 11-12, 13, 16-17, 10-21.  See, Mullaney v. Wilbur, 421 U.S. 684, 701, 704 (1975) (when patently erroneous jury instruction on provocation "affirmatively shifted the burden of proof [on provocation] to the defendant[,]" the Supreme Court granted petitioner's habeas writ because the "Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is

properly presented in a homicide case").

The Court of Appeal rejected Petitioner's claim under California law. The court reasoned that the jury "would have understood" . . . what the court meant by "provocation as I have defined it" from its instructions that "provocation can arise from a sudden quarrel or heat of passion, and provocation must be such as would cause a person of average disposition to act rashly and without due deliberation." <u>Martinez II</u>, slip op. at 12-13, 2010 WL 127559, at *7. In addition, the instructions included a thorough definition of heat of passion and explained that "provocation may occur over a short or a long period of time." <u>Id.</u>, slip op. at 13, 2010 WL 127559, at *8.

The Court of Appeal also held that the trial court's provocation instruction was adequate although it did not explicitly explain that provocation may encompass verbal provocation as well as physical conduct. <u>Id.</u> The instructions did not exclude "oral provocation or suggest that provocation had to be physical conduct." <u>Id.</u> Furthermore, the common meaning of the word "provoke," and defense counsel's arguments on oral provocation, which faced no objections during the trial, would have helped to clarify the instructions if there was any confusion on verbal provocation. <u>Id.</u>

The Court of Appeal's only real concern with the trial court's instruction was that provocation, as used in a jury instruction, may have a technical meaning that a common juror may not have known, "as it includes a requirement that the provocateur be the victim or a person reasonably believed by the defendant to be victim." <u>Id.</u>, slip op. at 13, 2010 WL 127559, at *8. But any error resulting from that omission would have been harmless under <u>People v. Watson</u>, for two reasons.[2]  <u>Id.</u> First, the defense counsel argued, without objection, that petitioner acted in the

---

[2] The <u>Watson</u> standard, examining whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error," is the harmless error standard California courts use when evaluating trial errors under state law. <u>People v. Watson</u>, 46 Cal. 2d 818, 837 (1956). This state standard "is the equivalent of the <u>Brecht</u> standard under federal law, to wit, whether the errors had a 'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Bains v. Cambra</u>, 204 F.3d 964, 971 (9th Cir. 2000).

heat of passion due to years of being provoked by Cerna, his friends, and fellow gang members. Id. Second, the instructions did not restrict who must cause the provocation, and neither did it "preclude a finding of provocation based on conduct or words by persons other than the victims or persons [petitioner] thought were the victims." Id. Thus, the alleged error was harmless because it was not reasonably probable that defendant would have obtained a more favorable result had the trial court given the technical instruction. Id., slip op. at 13-14, 2010 WL 127559, at *8.

The Court of Appeal's reasoning is sound, and applies equally strongly to any federal claim based on the same alleged error. "[N]ot every ambiguity, inconsistency or deficiency in a jury instructions rises to the level of a due process violation." Middleton, at 437. The inquiry is "whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147 (1973)). Furthermore, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. 146-147. When the instructions are considered as a whole, they adequately define provocation for the jury.

As the Court of Appeal also pointed out, other aspects of the concept of "provocation" were discernible from counsel's arguments. For example, during closing argument, defense counsel recounted Cerna allegedly saying, "[h]ey Russell, I'm going to shoot you. I'm going to kill you," on the day of the incident. Exh. 3, at 1850-1851. Counsel then informed the jury that this verbal communication was the last straw saying, "[t]hat's provocation. That's heat of passion." Id. It is reasonable that the jury would infer that verbal provocation could be considered from counsel's argument.

Although the jury instruction failed to provide the complete technical definition of provocation, the jury would have understood from the evidence presented at trial that Cerna's provocation could reduce defendant's murder charges. Even if the trial court did err by failing to

10

instruct the jury that Ayala need not be the provocateur, the error was harmless under Brecht.[3]

Evaluating the entire record, this alleged error did not have a substantial or injurious effect. During jury deliberations, the jurors asked the court whether provocation can be transferred to a third party and the judge properly answered in the affirmative. Exh. 3, at 2015. Petitioner fails to show that the instructions so infected the trial as to deny his due process rights.

Furthermore, the Court of Appeal did not unreasonably apply Supreme Court precedent when failing to apply the precedent established in Mullaney. "In a criminal trial, the state must prove every element of the offense, and a jury instruction violates that due process if it fails to effect to that requirement." Sandstron v. Montana, 442 U.S. 510, 520-21 (1979). The defendant, however, is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir.1979). "Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury." Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir.1995).

Here, unlike in Mullaney, the instruction did not misstate the law by shifting the burden of proof on provocation to the Petitioner. Moreover, an examination of the trial record reveals that the jury was instructed at least two separate times that the prosecution had the burden to prove that the defendant committed murder rather than the lesser offense, and that the prosecution had to prove that defendant did not kill as a result of a sudden quarrel or in the heat of passion. Exh. 3, at 1791, 1796.

---

[3] In Brecht, the Supreme Court held that a less stringent harmless error standard should be applied in habeas corpus cases where the state court conducted a harmless error review. Thus, a federal district court should conduct its own de novo analysis to determine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637. See, e.g., Bains v. Cambra, 204 F.3d 964, 975-976, 977 (9th Cir. 2000) (holding the Ninth Circuit applies the Brecht standard to all cases under 28 U.S.C. § 2254 as an independent review of the state court's decision, even if the trial court applied the Watson standard in its analysis because it had found that the errors were not constitutional errors).

11

Even the prosecution noted that it bore the burden of proof as to provocation and spent a significant portion of its closing arguments discussing the lack of provocation. Exh. 3, at 1811-813, 1841-843. In his closing argument, defense counsel stated "Russell Martinez does not have to prove provocation. He does not have to prove that he acted in the heat of passion. The prosecution must prove the contrary beyond a reasonable doubt." Exh. 3, at 1854.[4] In sum, the Court of Appeal did not unreasonably apply settled Supreme Court precedent in concluding that these deficiencies deprived Petitioner of his Fifth and Sixth Amendment rights.

Petitioner is not entitled to federal habeas relief on this claim.

### b.     When the Jury Could Consider Evidence of Provocation

Petitioner contends that the trial court erred in its instruction as to when the jury could consider evidence of provocation. Petitioner argues that the trial court improperly instructed the jury to consider provocation only after they concluded that petitioner had committed murder. The trial court's modified version of CALCRIM 552 given to the jury was as follows: "Provocation may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder." Exh. 2, at 27.

The Court of Appeal found no error with respect to these instructions. Martinez II, slip op.

---

[4] Petitioner understandably points out that the attorneys' statements cannot supplant the court's own instructions, especially since the court stated specifically that "*If the attorney's comments on the law as I explain it conflict with my instructions, you must follow my instructions.*" Traverse at 12 (italics in original). It is true, of course, that judges' statements on the law have a greater influence on jurors that the legal arguments on counsel. See Boyde v. California, 494 U.S. 370, 378 (1990). But in Middleton, the Supreme Court reversed the Ninth Circuit for granting habeas relief in a similar situation, since "the [judge's] instructions were at worst ambiguous because they were internally inconsistent [and] [n]othing in Boyde precludes a state court from assuming that counsel's arguments clarified an ambiguous jury charge." Middleton, 541 U.S. at 438. Because defendant has failed to allege any conflict between the jury instructions and counsel's arguments, the court rejects Petitioner's argument on this point.

12

at 15-16, 2010 WL 127559, at *8-9. The court reasoned that because the first clause ends with "but was provoked," the jury was compelled by the instructions to consider evidence of provocation when deciding whether petitioner committed murder. Id., slip op. at 16, 2010 WL 127559, at *8. The Court of Appeal held that the instructions taken as a whole adequately instructed the jury to consider provocation in contemplating whether to reduce Petitioner's homicide charge from murder to manslaughter, and noted that the trial court's instructions specifically instructed the jury that malice was required to find murder, and further added that provocation may reduce murder to manslaughter. Id., slip op. at 15-16, 2010 WL 127559, at *9-10. Thus, there was no error as to these instructions.

Alternatively, even if the instructions were ambiguous, the Court of Appeal concluded "we find no reasonable likelihood that jurors would have thought that the evidence of provocation was not relevant in determining whether [Petitioner] committed murder; or that they could not consider such evidence unless and until they decided that defendant had committed murder[,]" i.e. that the jury misapplied the instruction at issue. Id., slip op. at 16, 2010 WL 127559, at *10.

The Court of Appeal's reasoning is sound. Petitioner's interpretation of the instruction given by the trial court is unreasonable in light of the entire trial proceeding because it is clear from the instruction itself that the jury was to consider provocation as a factor in mitigating petitioner's potential murder charge.

Even if this court found the instruction to be ambiguous, there is no reasonable likelihood that the jury applied the instruction in a way that violated the federal constitution. In reviewing an ambiguous instruction, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle, 502 U.S. at 72-73 (even if instructions were perceived by jurors to be ambiguous, it is not reasonably likely that those jurors would presume they could find petitioner guilty of murder before considering evidence of provocation, where the record shows that much trial time was devoted to that issue).

13

The Court of Appeal's decision is not an unreasonable application of Supreme Court precedent, given the Supreme Court's analysis in Middleton, 541 US at 433. In Middleton, the trial court's jury instructions on "imminent peril," an element of imperfect self-defense, incorrectly added the phrase "as a reasonable person." The correct instruction would not have included this phrase because imperfect self-defense is available to a defendant who kills under an "honest but *unreasonable belief*." Id. at 434-35, 436 (emphasis added). Reversing the Ninth Circuit's decision granting habeas relief, the Supreme Court that: (1) the instruction was ambiguous, rather than erroneous, in light of the jury instructions as a whole, which included three correct versions of the instructions and only one incorrect version; (2) the correct harmless error standard to apply in cases of an ambiguous instruction is whether it is reasonably likely that the jury was misled by the instructions in their entirety; and (3) the state court's conclusion that the jury was not misled was not an "objectively unreasonable" application of the reasonable likelihood standard under the Court's deferential AEDPA analysis. Id. at 434, 435-36, 438.

Here, upon an examination of the entire jury charge and the trial, the jury instruction is ambiguous rather than erroneous, because the judge correctly and clearly instructed the jury on this issue on two other occasions. Exh. 3, at 1791-792, 1799. Moreover, defense counsel's statements at closing argument, made without objection, should have made it clear to the jury that they must consider the evidence of provocation. Id. at 1843, 1850-851, 1854. Therefore, the Court of Appeal's conclusion that the jury was not misled was not an "objectively unreasonable" application of the reasonable likelihood standard.

Petitioner is not entitled to federal habeas relief on this claim.

    **c.**    **"Major Concepts" of Provocation**

Petitioner claims that the trial court committed prejudicial error by failing to instruct the jury on three major concepts of provocation. Petition, Attachment Number Three, at 1-2. Petitioner claims that (1) the trial court erred in failing to instruct the jury that provocation can be the result of a "series of events" which occur over a considerable period of time; (2) the trial court

should have instructed the jury may consider whether there was a sufficient cooling-off period when the provocation extends for a long period of time; and, (3) the trial court failed to instruct the jury that verbal provocation may be sufficient. Id.

The Court of Appeal found that the trial court adequately instructed the jury on all three legal concepts, and if petitioner wanted an amplified or pinpoint instruction it was his duty to request it. Martinez II, slip op. at 17, 2010 WL 127559, at *10. The Court of Appeal's finding is reasonable. Again, the Court must look to the overall instructions given to the jury in determining whether an error has occurred. Here, Petitioner alleges only omissions in instructions which are less likely to be prejudicial. See Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson, 431 U.S. at 155) ("a habeas petitioner whose claim involves a failure to give a particular instruction bears an 'especially heavy burden.'")

Although Petitioner first claims that the trial court did not instruct the jury that provocation can result from a series of events, the court's instruction actually read that "[s]ufficient provocation may occur over a short or long period of time." Exh. 2, at 28. The court agrees with the Court of Appeal's reasoning that "a long period of time" implies that a series of events could qualify. Furthermore, the defense presented testimony on a series of assaults by Cerna and his friends to show provocation. Defense counsel also argued, without objection, in his closing statement that Cerna's taunts were "the final straw. That was the straw that broke the camel's back." Exh. 3, at 1850. The jury likely interpreted the trial court's instructions as indicating that sufficient provocation may result from a series of events.

The Court also disagrees with Petitioner's contention that "the jury was never told that the length of the provocation could be one factor for the jury's consideration in determining the adequacy of the length of the cooling off period." Petition, Attachment Number Three, at 1-2. The trial court's instruction stated that "[i]f enough time passed between the provocation and the killing for a person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis." Exh. 2, at 28.

15

These instructions do not limit the jury to only considering only the last act of provocation in considering whether there was a sufficient cooling off period. When viewed in context with the instruction that provocation may occur over a short or long period of time, the jury would have considered the length of provocation in determining whether there was a sufficient cooling off period.

Lastly, Petitioner's claim that the trial court erred in failing to provide a specific instruction on verbal provocation does not rise to the level of a constitutional violation because the instructions on provocation did not preclude verbal acts of provocation. The instructions stated "no specific type of provocation is required," which implies that the jury is allowed to find verbal provocation sufficient. Exh. 2, at 28. Although petitioner did provide some evidence of physical provocation, such as the assaults he allegedly suffered, defense counsel also pointed to Cerna's verbal taunts as the last act of provocation, without objection by the prosecution. Exh. 3, at 1850-851.

The Court of Appeal concluded that the failure to instruct on these major concepts was not an error under state law, and even if it was an error, the error was harmless. For these same reasons, even assuming the instructions were "ambiguous," the court finds that Petitioner has not demonstrated that it is reasonably likely that the jury applied the instruction in a manner that violated the constitution. Because the jury was adequately instructed on all three major concepts that petitioner claims were erroneously omitted by the trial court, Petitioner was afforded a meaningful opportunity to present a complete defense. Petitioner's request for federal habeas relief on this claim is denied.

### 2. Ineffective Assistance of Counsel

Petitioner claims that trial counsel provided ineffective assistance in not requesting instructions on the three concepts of provocation discussed III-B-1-c, *supra*. Petitioner also claims that trial counsel should have requested an instruction regarding how provocation can be considered by the jury in reducing attempted premeditated murder to mere attempted murder.

16

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 686 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. See Pinholster, 131 S. Ct. at 1410-11. The general rule of Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

The Court of Appeal applied the Strickland standard in holding that counsel's performance did not fall below a standard of objective reasonableness. With respect to the three concepts of provocation, the court stated:

> The record on appeal does not reveal the reasons why counsel did not request pinpoint or amplifying instructions, and we do not find that counsel's failure to do so was unreasonable as a matter of law. In our view, counsel reasonably could have concluded that together, the instructions the court intended to give and his closing argument would

17

> adequately inform jurors that (1) provocation can be verbal, (2) it can involve a series of events over a long period of time, and (3) because the provocation had lasted so long, defendant did not cool down during the time it took to retrieve his gun and return–points that counsel ultimately made during closing argument.

Martinez II, slip op. at 18-19, 2010 WL 127559, at *11.

The Court of Appeal's reasoning is sound. Counsel could have assumed that no specific instructions by the court were necessary because the instructions adequately informed the jury on the basic concepts of provocation for the same reasons discussed *supra*. Furthermore, defense counsel addressed the concepts in his closing statement, by reminding the jury of Cerna's last verbal provocation, the series of assaults suffered by Petitioner for a number of years, and the short amount of time it took Petitioner to retrieve his gun given the lengthy period over which the provocation occurred. See Exh. 3, at 1850-871. It is reasonable for counsel not to request a pinpoint instruction where the information was likely already received by the jury.

Petitioner also argues that counsel should have requested instructions informing the jury that provocation could reduce attempted premeditated murder to attempted murder. The Court of Appeal rejected this claim, reasoning as follows:

> Counsel reasonably could have thought that the court's instruction adequately informed jurors that they could not, and must not, find the special allegation of premeditation true if they concluded that defendant was acting rashly and without due deliberation and reflection. Accordingly, counsel could have found it unnecessary to request an instruction that informed jurors more generally and indirectly that provocation can reduce attempted premeditated murder to attempted murder.

Martinez II, slip op., at 19-20, 2010 WL 127559, at *10.

Here, it was also reasonable for the Court of Appeal to deny petitioner's claim of ineffective assistance of counsel. The record indicates that the court instructed the jury that "[a] decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated," and that provocation can be found where "the defendant acted rashly and under the influence of intense emotion that obscured his judgment." Exh. 2, at 23, 28. It is evident from these instructions that if the jury had found provocation, they would have also found that

18

Petitioner acted rashly, which, pursuant to the instructions, precluded a finding that the decision to kill was deliberate and premeditated. Therefore, it was reasonable to conclude that defense counsel could have thought that the instructions clearly informed the jury that a finding of provocation would reduce petitioner's attempted premeditated murder to attempted murder.

Petitioner failed to demonstrate that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms. Therefore, the Court of Appeal's denial of Petitioner's claim was not an unreasonable application of clearly established Supreme Court authority. Petitioner is not entitled to federal habeas relief on this claim.

### 3.    **Cumulative Error**

Petitioner claims that even if the errors do not themselves constitute valid grounds for federal habeas relief, the cumulative effect results in a fundamentally unfair trial. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation. See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002). Other than the possible, but harmless, error created by the jury instructions, petitioner has not shown that there were any constitutional errors at trial, and therefore he similarly has not shown cumulative error. Accordingly, Petitioner's claim of cumulative error is DENIED.

## IV.    **CONCLUSION**

The Court of Appeals' decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and neither did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S.

19

473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: September 14, 2014

_____
JON S. TIGAR
United States District Judge